No. 40,104

C. R. Hawes, *Appellee*, v. W. D. Rhodes and Maude Carpenter Children's Home, *Appellants*.

No. 40,105

Mary Nettie Hawes, *Appellee*, v. W. D. Rhodes and Maude Carpenter Children's Home, *Appellants*.

(298 P. 2d 276)

Opinion filed June 9, 1956.

E. *Lael Alkire*, of Wichita, argued the cause, and *Richard B. Clausing, Robert A. Coldsnow*, and *Aubrey J. Bradley, Jr.*, all of Wichita, were with him on the briefs for the appellants.

*Robert E. Blase*, of Wichita, argued the cause for the appellees.

The opinion of the court was delivered by

ROBB, J.: These appeals are from cases consolidated for trial in the court below involving the granting of writs of habeas corpus in favor of petitioners, the natural parent in each case. In case No. 40,104 two minor children were delivered to their natural father, and in case No. 40,105 two other minor children were delivered to their natural mother. Respondents, W. D. Rhodes and Maude Carpenter Children's Home, appeal. The two appeals have been consolidated in this court and will be considered as one.

The record disclosed there were two petitions filed in the district court of Sedgwick county on June 23, 1955. One sought the issuance of a writ of habeas corpus restoring to C. R. Hawes the custody of his son, Gary Eugene, fourteen years of age, and his daughter, Diana Marlene, twelve years of age. The other petition sought the issuance of a writ of habeas corpus restoring to Mary Nettie Hawes the custody of her two sons, David Lee Brigman, seven years, and Duwaine Keith Brigman, twelve years. In each case appellants, the Maude Carpenter Children's Home and W. D. Rhodes, as president and superintendent of that home, filed returns showing the nonprofit corporate existence of the home; that it was an organization to care for, maintain, and educate destitute and friendless children and was authorized by law to place such children for adoption. The returns showed that the home had custody of all four of these children by reason and authority of surrenders entered into by the natural parents of the children in question. The Brigman children entered the home on January 4, 1951, and the Hawes children entered on February 2, 1951.

The surrenders were identical in the case of each child except that C. R. Hawes struck out the paragraph pertaining to the adoption of his two children. After identification of the parent and child with the date and place of its birth, each surrender contained terms to the effect that the parent surrendered the child to the cus-

tody of the home and promised not to interfere in any respect with the management of the child or to visit the child. The parent relinquished all right and claim to the child or to its services during minority in consideration of the benevolence manifested by the home and in consideration of the home, care, Christian training and education which may be provided by parents selected by the home. The parent further promised not to seek to deprive the home of the care or custody of the child or to ask any consideration for its services. He promised not to discover or molest the child or induce it to leave the home or family where it may be placed, or visit it without the home's written consent and the consent of the family with whom the child may be placed. In the surrenders of the two Brigman children the mother authorized the home to secure legal adoption for the children by persons chosen by the home without further notice to her.

After a presentation of legal matters to the court, appellees were permitted to file replies to appellants' returns which were similar and in addition to what has heretofore been mentioned and they further alleged that appellees denied entering into the respective surrenders; that the respective children and their parents, were hungry, that the home was recommended, and agreements for the children's care were entered into with appellant, W. D. Rhodes, with the understanding that when able the parents could contribute money to the home and receive the children back. Under pressure of the welfare of the children certain instruments were executed from which large portions had been stricken, but these instruments were not acknowledged by a notary public. Appellees further alleged that appellants had restrained the children of their liberty, had kept them under guard at all times, that they would not allow the parents to visit their children and attempted to eject the parents from church services which the children were attending under guard. Finally, appellees alleged that any such instruments had been rescinded on June 30, 1955, under notice by registered mail to appellants.

As already mentioned, the two cases were consolidated for trial by the district court, since the parents had met at the Maude Carpenter Children's Home on occasions of visiting their respective children and had later become husband and wife. Opening statements were made by both parties and certain evidence was introduced, at the conclusion of which the trial court in granting the writs of habeas corpus found that the surrenders of the chil-

dren were consents for adoption which could be withdrawn. The trial court stated it relied solely on the rule in *In re Thompson,* 178 Kan. 127, 283 P. 2d 493, where the statement is found that ". . . the consent of [a mother] . . . to the adoption of her child and not acted upon by the probate court might be withdrawn by her for any reason which to her appeared good." (p. 135.)

A motion for new trial in each case was overruled by the trial court and this appeal followed.

The above legal premise was not well taken by the trial court because there is not only an entirely different set of facts and circumstances involved in this case but the statutory provisions are different from those applicable in the Thompson case. That case presented only a consent to adoption with no element of a benevolent home provided for by statute which is required thereby to care for children surrendered to and accepted by it. Here we have such a home involved and the present appeal must be considered in the light of that situation. It would be somewhat more difficult to distinguish between the Thompson case, *supra,* and the present case so far as the Brigman children alone are concerned if we were to go on the assumption that only an adoption element is involved, but other facts and circumstances surrounding the Brigman children compel us to consider further. We mention this merely because of the trial court's ruling and in addition because Mr. Hawes struck the paragraph referring to adoption from the surrenders of his two children while Mrs. Hawes did not so strike such paragraphs from the surrenders of her two children.

In addition to what has been said, appellants contend and the record bears them out, that no evidence was introduced on the trial, nor allowed to be introduced before the trial court, as to the present fitness of the parents to have the children or whether the best interests of the children and their welfare would be better served by returning the children to their parents. These matters deserve some consideration even though they may not be controlling because we are not unmindful that such matters are in the discretion of the trial court. However, here there was no evidence upon which such discretion could be based.

In conclusion, we think the Thompson case did not control in the case under consideration for the reasons shown and the trial court erred in concluding that it did so control as a matter of law.

The judgment is reversed and a new trial ordered.

PRICE, J., concurs in the result.